at all. All right, Mr. Biss. Good morning, Your Honor. May it please the court. My name is Steve Biss. I'm an attorney in Charlottesville, Virginia, and I represent Congressman Devin Nunes in this case. We're asking the court to reverse the district court's granting of a motion to dismiss under Rule 12b-6 for two reasons, two principal reasons that I'm going to focus on in my presentation today. The first is the defamatory implication of the article in question, as alleged by Congressman Nunes in his pleadings, is the defamatory implication that this article conveys. The second argument is that Congressman Nunes sufficiently alleges actual malice. As to the first argument, the article really has four components. It's a cleverly drafted, carefully shown article that has four components. It accuses Congressman Nunes of conspiring with his family and with another congressman to conceal a politically explosive secret. The court ought to focus on the exact words that Mr. Lizza used because they were intentional. Mr. Lizza intended to convey the meaning that Congressman Nunes conspired with his family and Representative King to conceal a politically explosive secret. And that secret was that Congressman Nunes's family operates the dairy farm using illegal or unauthorized labor. That's the only way this article could be interpreted because the article would have no meaning otherwise. The court in this court in Lundell and Toney really give us the operative, constructive guidance as to how we're supposed to look at this article. We're supposed to look at the article as a whole. The district court failed to do that. The district court parsed the article and isolated the statements, but didn't view the statements as a whole. In Toney, the court very, this court very clearly said that the court, that the proper way to look at this case, this defamation case, is to look at the allegations in the article as a whole. Now, the article, when it is viewed as a whole, it creates the bombshell that was intended by Mr. Lizza and Hearst Magazine. This article was intended to convey the meaning that Congressman Nunes is a hypocrite. Congressman Nunes is hiding a violations of federal law. And when the court links together that this is the operative, this is the operative language, when it links together the four parts of the article, it comes up with a very clear view of the defamatory meaning of it. There is a, in preparing for the argument today, I came across an Eighth Circuit case, the Turntine v. Peterson case. And in that case, the court used, in looking at whether an article was defamatory or capable of a defamatory meaning, the court used the words, the statements in the article build on one another. That's exactly what we have in this particular case. Counsel, is Turntine in your brief? Judge, it may be in the brief. I'm not, I can't, I can't positively tell you if it's in the brief. It's a 959. Would you provide the court with, would you provide the court with a 28-J indicating your reliance on that precedent and citing this to it? Yes, sir, I will. It's similar to the to the other precedent that we actually do cite in the brief. It's really not different. Where the, the way the court has to look at the article is it has to link the various passages together. Now, this article starts with a lead, and the lead in the article is the headline. It starts with the phrase Devon Nunes' family farm is hiding a politically explosive secret. Now, the article is not about a secret because there was no secret. And that's one of the factual inaccuracies in the article. The article is not about an explosive secret because it doesn't say that. It says it's a politically explosive secret. And that politically explosive secret could only be, in this case, could only be the use of the unauthorized labor, the immigration issues. And of course, you know, we have the photographs of the ICE agents carrying out raids in the article. We have the the cartoon of Mr. Lizza being afraid and being stalked and followed, suggesting that somebody is trying to hide a crime. We have various indications in the article from which a reasonable fact finder could conclude that they meant exactly what they were trying to to to convey. And of course, the allegations in paragraph 27, among others, are that the readers of this article, the viewers of the I would ask the court to reverse the district court on that particular issue and find that this article is capable of a defamatory meaning. The second issue that I want to address today that is actual malice in the district court ruled that all of the allegations in the complaint were conclusory. They weren't. The district court, with great respect, erred. And Congressman highlights four categories of facts that show that or that would plausibly allege a claim of actual malice. Number one is the allegation that Mr. Lizza and Hearst magazine fabricated this story. I would direct your honor's attention to the St. Amant case. St. Amant or what allegations do you have to put forth to allege actual malice and an allegation that that a reporter or a journalist fabricated the story is is most certainly an allegation of of actual malice. We also allege in paragraph thirty five of the complaint that Mr. Lizza relied on on unreliable sources. And I want to add one thing here about the about the stage of the case that we're at. We're at a motion to dismiss stage. So Congressman Nunez can only allege what he knows. Now, the whether or not Mr. Lizza fabricated this story fabricated the sources. That's not going to be known to Congressman Nunez or any other public figure, private individual alleging a defamation case until we get into discovery and discovery in this case is most certainly going to support allegations in this case. But but I would suggest to the court in reviewing this this this case and defamation cases in general where the information is in the exclusive possession of the reporter, there ought to be a somewhat relaxed standard in terms of looking at the twelve B six argument because Congressman Nunez would not know until he obtained discovery of of the communications between Mr. Lizza and the and the punitive sources. The articles refers to three sources. Now, Congressman Nunez wouldn't know until he got the audio tapes or what other whatever other information Mr. Lizza had to know whether there were any sources, whether Mr. Lizza misquoted them, whether he fabricated what the sources said. Congressman Nunez wouldn't know that. But he's alleged in this case that Mr. Lizza relied on unreliable sources and that he fabricated information. And that ought to be enough. Now, I go one step further and I'll also indicate here Congressman Nunez refers to the multiple inconsistencies and inaccuracies in the story. And this court in the Tolan case, I hope I'm pronouncing that right. It's T.H.O.L.E.N. We cite it in our brief. In the Tolan case, this court said where the article at issue or where the statements at issue contain multiple inaccuracies, that can lend to an inference of actual malice. And the court, of course, overruled a 12b6 motion in that particular case. In this case, we have multiple inaccuracies alleged in the amended complaint. No, there was no secret. There was no move of the of the family farm to California. There was no conspiracy and there was no use of undocumented labor at the farm. Those are all multiple inaccuracies. And with all reasonable inferences resolved in favor of Congressman Nunez, that ought to be enough to get us past the 12b6 stage into the discovery that I that I spoke of. The fourth factor alleged in the complaint is the intent. Congressman Nunez alleges that Mr. Lizza intended to inflict harm on him through falsehoods. We direct the court's attention. We highlight the timing of this article. Very important in this case because the article was published 36 days ahead of the 2018 congressional election. We allege that it was based on that there was no evidence to support it and that it was solely published for improper purpose, which was to dirty up Congressman Nunez ahead of the election. Now, those allegations must be accepted as true. We believe the timing is critically important and I would direct your honor's attention. We cite the speed versus Northwest Airlines case in our brief. And in that case, a 12b6 motion was a 12b6 motion to dismiss was denied because the statements made with with malice were made with malice in that the defendant's intent was to inhibit the plaintiff from pursuing legal action. And here, Mr. Liz's intent, Hearst's intent was solely to influence the 2018 election and cause Congressman Nunez problems during that election through the publication of a highly sensational story about hypocrisy and bombshells and politically explosive secrets. The we direct your honor's attention also to the Tomlin case out of the was that the defendant published the story for the sole purpose of sensationalizing a matter for for self-interest and the Fourth Circuit easily held there that that actual malice was established. Judge, I your honors, I see I'd like to reserve the rest of my time for rebuttal if I could please. Yes, you may. Thank you, sir. Thank you, Mr. Biss. Mr. Dinellen. Good morning, your honors, and may it please the court. I'd like to start by just pointing out that the district court's opinion in this case is extremely thorough and well-reasoned and provides multiple grounds to affirm. And it's striking the grounds that have not been addressed by Mr. Biss and by the appellant in this case. The way this case has been litigated raises questions about what it's really about. There's been an abandonment of the challenge to 11 express statements. Nine were not even addressed in the brief. The two now have not been addressed in argument at all. And there's been a new one that has been raised for the very first time in the brief on appeal. The argument with respect to the need for showing an endorsement or some sort of intention of the implication was not addressed at all below and is not addressed here today. Mr. Biss has raised a challenge to the Sullivan case in his appeal, which was not been quite a moving target. And I would say that the court could easily affirm this case on the grounds that the district court did without even addressing these arguments and just on the basis of the arguments that he has abandoned or waived. But let me speak directly to what he has remarked. There's a couple of remarkable concessions here today and statements, one of which is that his reading of the article to draw the implication that representative Nunez had hidden or kept secret the use of undocumented labor at his brother and father's farm is the only way that article could be interpreted. And also his claims that this is based on false facts. In particular, the use of undocumented labor at the farm. And I'd like to address that first because in the amended complaint, one of the things that's significant is that the plaintiff in this case, representative Nunez, concedes in paragraph 15 of the amended complaint that he has no interest in the farm, no financial interest, no operational interest, and that he does not know anything about the hiring practices at the farm. So any allegation in the complaint that they were not hiring undocumented workers to begin with is inconsistent with his averment that he knows nothing about their hiring practices. So the argument that has been made throughout the briefs that the implication could not be an opinion for one thing because it's based on false facts is contradicted by the averment in the complaint. What about the alleged implication, though, that the congressman was trying to keep secret the the use of undocumented labor? Is that an implication of the article? No, your honor, I don't believe that that's a reasonable implication and the standard here is one of what an objectively reasonable reader would draw from this. The article expressly says what the secret is and it says so in very direct language and if one goes to the joint appendix, the article itself at page 85, it says it brings us back to Nunez's secret and then in the last paragraph it says, so here's the secret. The Nunez family farm of political war, the one where his brother and parents work, isn't in California. It's in Iowa, period. But what about the paragraph later that says that one reason they might be so secretive is that farms tend to run on undocumented labor? By that point in the article, your honor, it has shifted entirely to a discussion of Mr. Nunez's parents and his brother. There is no statement whatsoever concerning representative Nunez there and there's no way that even if one could draw that implication that it could be of and concerning representative Nunez. Do you think when it refers to the Nunez family, the reader would exclude the congressman? I do, your honor, given the fact that there are express statements in there that he had sold his interest, he had no ownership interest or operational interest, and he's not mentioned at all. But the headline calls it Devin Nunez's family farm. It does. It does say that, but you have to, to go back to Mr. Biss's point, that you have to read the article as a whole. That's an unremarkable statement and defamation. Well, you have to read an article as a whole in terms of trying to determine whether or not the alleged implication, which has to be grounded in express statements, makes any sense. And that headline in and of itself doesn't get you there. Meanwhile, it says in that headline, just to go back to the headline, your honor, it says, so why did his parents and his brothers cover their tracks? Are they hiding something politically explosive? That's what the headline says. So even if you were just to focus on the headline and the sub headline, it clarifies that that is focused on the family. And there's nothing to connect forward from the beginning of the article, which is talking entirely about Devin Nunez's origin story, if you will, in terms of he portrays himself as being from a California farming family. And then as the article moves along and focuses on the practices in Iowa and what his family's practices are. And your honor, I'd say that even if you could say that a reasonable reader could draw that, then that still takes you to the question of whether or not you would say that that implication is endorsed or intended. And a word about the implication claim there. I think that a very good case on this recent case is the Dallas Morning News versus Tatum out of the Texas Supreme Court, which gives a very lengthy discussion of implication claims, how they should be addressed, how the reasonable reader standard works, and also the requirement, the need for the First Amendment requirement of an intention or endorsement requirement. And that's precisely because in a case like this where you're talking about a juxtaposition implication, it's not premised on any false statement of fact. This is the most dangerous type of defamation claim. One where it is not grounded in a specific falsity, which is usually the touchstone of a defamation claim, and is not grounded in a material omission. And those are usually where you're going to find your defamation claim. So if it is premised purely on a juxtaposition, it makes all the more that the authors of the story intended or endorsed that based on a reading of the text, not based on what's in their mind, but based on affirmative evidence in the text. And this goes back to this court's decision in Janclow, which has been interpreted by the D.C. Circuit in white, and has been interpreted by many other courts. And every circuit court which has looked at this has said that that is what the First Amendment requires, because that is a reasonable safeguard. And the court in Tatum points out the dangers to free speech of an implication claim and a juxtaposition claim where there is no statement of false fact that has been statements of fact. He's not even arguing them on appeal. So it's very important to focus on that. Then, Your Honor, it turns to even if you could pass those two hurdles that a reasonable reader would draw the implication, and a reasonable reader would also say that it was intended or endorsed by the publisher, whether or not that's even an actionable statement of fact or whether or not in context it would be considered an opinion. And two cases which I think are instructive in this regard are, again, the Janclow case out of this court, and in particular the Embank decision of the Janclow court, where ultimately it found that the implication of retaliatory prosecution was not an actionable statement because it was one of opinion. This says the contrary in his brief, but he does not cite to the Embank decision, which reversed the earlier decision of the court, which said that it was actionable. The Embank court found that it was actually a matter of opinion. And one of the things that it pointed to in particular is the need for First Amendment protection for editorial judgment making and choosing what to include and what not to include. And it says, Your Honor, that when you have a statement which is imprecise and there is spirited writing is expected, and it's in that kind of a forum, and it involves criticisms of the motives and intentions of public officials, that's particularly where the First Amendment requires you to take into account the context to find that it's a matter of opinion. And here, what do we have? We have allegations in the complaint that the author of the article, and I'm taking the allegations as true for purposes of this motion, but is characterizing the author, Ryan Lizza, as high profile, left-wing, well-known for an extreme bias against Representative Nunes. And however I might take issue with that characterization of Mr. Lizza, those are the allegations of the complaint. And in that context, which we have to accept as true, it would also go to how this is a matter of opinion, because no reasonable reader against that background would take this as articulating, suggesting, intending some verifiable statement of fact with respect to Representative Nunes. Another example is the Tatum case itself, where the court goes through, again, a lengthy discussion of the requirements for an implication, and with respect to one of the implications alleged, finds that it is reasonable to find it, finds that it is intended or endorsed, but then goes on to say that it is a matter of protected opinion, when you look at it in context, because no reasonable reader would find it to be suggesting a statement of verifiable fact with regard to the plaintiff. And there... Make sure I understand your point here. Are you saying that if there were an implication here in the article that the congressman was attempting to hide the existence of the Iowa farm because of the use of undocumented labor, that would just be the author's opinion that he was doing that, and not an assertion that he was factually doing that? Is that... Even if you pass those thresholds, and you have to look at the particular language... Why would it just be an opinion? Why wouldn't that be an assertion of fact? Well, the challenged implication is one that there was a conspiracy, and it was a conspiracy to hide it. And in context, what does that mean, a conspiracy? What does it mean to hide it? The entire implication, in and of itself, within the context, is not suggesting any particular verifiable fact. That a reasonable reader would draw here. And those cases, the Tatum case and the Janklow case, your honor, where there were pointed allegations, one in the Janklow case that there was prosecutorial misconduct. And it was not as attenuated as in this case, and it was not based simply on statements that entire article, which were entirely true. And in the Tatum case, again, the implication was that the parents in that case who were addressed in the column had acted deceptively. And it was found that in the context of an opinion column, that that was a matter of opinion. Because as you know, your honor, opinion doesn't necessarily... It's not about what you think, it's about whether or not that language and that implication is objectively verifiable as a matter of fact. In the time I have left, I'd really like to address the actual malice argument, if I may. Mr. Biss has made a remarkable concession here today in saying that his clients don't know anything about the sources here and about their reliability. And that, in fact, goes to show why he can't state actual malice. These are conclusory allegations of actual malice. The St. Amand case spoke in terms... And your honor, if I could beg your permission just to finish this line of inquiry, I know I'm over my time. If not, I'll stop. I think we've heard... I think we've gotten sufficient from you to submit the case. Thank you, your honor. All right. Mr. Biss, your rebuttal. Counsel, you're muted. Mr. Biss, your mic is muted. Judge Smith, thank you. I didn't see that. I apologize to the court. Your honor, I want to hit on three points that Mr. Dinella raised. Number one is the question of intent or endorsement. That is a question of fact for the jury. We have alleged in the amended complaint, paragraph 27, we alleged in our resistance, our opposition to the motion to dismiss on page 16 that Mr. Lizza acted with the intent to convey this defamatory meaning. The Keogh case, among others that we cite in our brief, establishes that this is a question of fact. And, of course, the article itself demonstrates that they intended or endorsed a defamatory meaning. And there are essentially three parts of that article that the court can look at to demonstrate that they intended a defamatory meaning. Number one, the title and the headline. And I would look at this as an alpha and omega situation. The alpha is the title and the headline. Devin Nunes' family farm is hiding a politically explosive secret. The omega is the end of the article, which is a video of Devin Nunes, and it's a picture of Devin Nunes, and it says, who is Devin Nunes? This article is all about Devin Nunes, and it's all about a defamatory meaning. The cartoon suggests the seriousness of the scheme and the efforts to which the Nunes family would go to cover it up. The photographs of the ice raids, there are multiple photographs of the ice raids, again, suggesting that the implication of this article is that there were crimes occurring at this dairy farm, which there weren't, and that Congressman Nunes was in on the cover-up. So that's the intent of the article. Sullivan, Your Honor, we suggest, we argue that Sullivan is no longer or shouldn't be good law. It should be reconsidered. I've briefed that. I'm not going to address that to the court. But even if the court were to not address what I might refer to as the elephant in the room, the Sullivan case, we've still alleged enough to show actual malice. One point Mr. Dinellon raised at the very end there was about the sources. We've alleged these sources are unreliable, and the evidence will show that these sources never said what they said, and we can prove that with evidence. That's not an opinion. That's a matter that can be adduced by evidence, deposition of a source. We can prove the source never told Mr. Lizzo what Mr. Lizzo wrote in the article, and we have alleged that the sources were unreliable and that he never should have relied on them. Yes, Your Honor. I think that one point made at the end there was that the opinion argument is that hiding or covering up something is not a verifiable fact. What do you say to that? What exactly is the verifiable fact that underlies your claim about no effort to cover up or hide? Yes, sir. Judge, conspiracy claims, collusion claims are tried and proven in courts everywhere in the country every single day. We have alleged that Congressman Nunes had no involvement in any hiring decisions or anything to do with labor at the farm, and we can prove that he never agreed with his family or with undocumented labor. Those are facts that can be proven by evidence, and here we have an article that is capable of two defamatory, is capable of two meanings, going back to what Mr. Dinellan said. Number one is it's capable, Mr. Dinellan wants to say that the only meaning is we wrote about a move from California and a political origin story. That's it. Well, the other way to interpret this article is we wrote an article that linked Congressman Nunes to the use of unauthorized labor at his family's dairy farm. That's what makes it politically explosive. That's what makes it makes Congressman Nunes a hypocrite, and the concealment makes Congressman Nunes appear to be dishonest. Thank you, Mr. Bizz. Mr. Bizz, court appreciates both counsel's presence and argument to the court this morning in support of the briefing that's been submitted to the court. We will take the case under advisement.